UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD H. TEGELER,

               Petitioner,               Case Number: 03-10075-BC
                                                      Honorable David M. Lawson

v.

PAUL RENICO,

               Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Edward H. Tegeler, presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, the petitioner challenges his 1999 convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and possession of a firearm in the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b. He was sentenced to serve life in prison without the possibility of parole for the murder and a consecutive two-year prison term for the felony firearm conviction. The petitioner argues that his constitutional rights were violated because he was not competent to stand trial; the jury was not instructed on voluntary manslaughter, a cognate lesser included offense; and the trial court did not have jurisdiction to convict him because he was not charged properly. The respondent contends that the petitioner's claims lack merit. Upon review, the Court denies the petition for lack of merit in the grounds presented.

I.

The petitioner was charged originally with first-degree felony murder and felony-firearm. At the conclusion of the preliminary examination, the examining magistrate bound the petitioner over to stand trial on these two counts as well as on an added charge of first-degree premeditated murder. However, the premeditated murder charge was not listed on the bindover document issued by the examining magistrate. The prosecutor filed an amended information in the circuit court which included the premeditated murder count, and the petitioner was arraigned on all three counts in the Wayne County Circuit Court on December 18, 1998. A plea of not guilty was entered on all three charges.

At the beginning of trial on June 23, 1999, the petitioner's counsel advised the court that the petitioner did not look well and might be having medical problems. The trial court judge acknowledged that the petitioner "didn't look right" to her either. Defense counsel informed the trial court judge that when he went to speak to the petitioner on the morning of the trial, he found the petitioner sleeping. However, counsel further indicated that in response to his questions, the petitioner indicated affirmatively that he understood what his counsel was saying and had a full comprehension of what was taking place in court that day. Counsel noted further, however, that the petitioner had appeared "woozy" to him. In response to counsel's questions, the petitioner stated on the record that he understood where he was and acknowledged that he was prepared to go to trial. (Tr. I at 4-6).

After the completion of jury selection and before opening arguments, the trial court judge said that although she did not believe that there was anything wrong with the petitioner mentally and he did not seem to be mentally incompetent, she was concerned because the petitioner's complexion

was pale and he had stumbled. Counsel told the trial court judge that the petitioner had a blood pressure problem and had not been given his medication in jail. The trial court judge, explaining that she was "upset" because this apparently had happened at the jail before, declared that she would attempt to get someone from the sheriff's department to come over and give the petitioner his medication. In response to a question from defense counsel, the petitioner said on the record that he felt "all right." (*Id.* at 70-72). The court took a recess.

The trial proceeded throughout the day. At the end of the day, the trial court judge noted that the petitioner was looking much better and that "[s]ome color is coming back into his skin." (*Id.* at 251). The trial court added, with apparent sarcasm, that now that the petitioner was getting better, the sheriff's department would probably take him to the hospital the next day and would not have the petitioner present in court for trial. Counsel told the petitioner: "No, don't go. Don't go. Just tell them to feed you in the morning. Okay?" (*Id.*) The petitioner agreed with this and the court replied that this would "probably be very helpful." (*Id.* at 251).

The evidence at trial established that the victim, James Smith, was shot and killed at his bar in Detroit in the early morning hours of July 17, 1998. The prosecution's theory was that the petitioner shot the victim because the victim asked the petitioner's girlfriend, Theresa Bell, to accompany him to Las Vegas. After shooting the victim, the petitioner stole the victim's gun and the bar proceeds.

The petitioner made a statement to the police after his arrest in which he admitted to shooting the victim. The petitioner acknowledged that he had gone over to the bar to talk with the victim, admitting that he had been "upset, a little angry, and stressed," and wanted to ask the victim why he was taking Bell to Las Vegas. The petitioner informed the police that he knew that the victim

had a gun, but did not know whether he had pulled it. He admitted pulling his gun and firing six or seven shots, but denied robbing the victim. He claimed he did not know why he shot the victim, but acknowledged that he had felt betrayed.

The petitioner was convicted by a jury in the Wayne County Circuit Court in Detroit, Michigan, on June 24, 1999. After he was sentenced, he raised the following issues on direct appeal:

> I. This case must be remanded to determine if Mr. Tegeler was denied his due process right not to be tried while incompetent to stand trial. If a retrospective competency evaluation determines that he was incompetent to stand trial, or if a meaningful retrospective competency evaluation cannot be conducted at this time, then he is entitled to a new trial.
>
> II. The trial court erroneously denied a defense request for an instruction on the cognate lesser included offense of voluntary manslaughter, where there was sufficient evidence to support such a conviction, in violation of Mr. Tegeler's state and federal due process rights to be tried by a properly instructed jury.
>
> III. The circuit court was without jurisdiction to try Mr. Tegeler on first-degree premeditated murder, where neither premeditated nor open murder was listed in the complaint, where the prosecution did not ask for bindover on such a charge, where the written bindover order did not list premeditated or open murder as a charge for which defendant was bound over, and where the prosecution failed to appeal the bindover order or move to amend the information to add the charge.

The petitioner's conviction was affirmed on appeal and the state supreme court declined to review the conviction. *People v. Tegeler,* No. 222155 (Mich. Ct. App. August 14, 2001); *lv. den.* 465 Mich. 967; 641 N.W.2d 861 (2002). The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Denial of due process right not to be tried when incompetent.
>
> II. Denial of due process right to properly instructed jury.
>
> III. Denial of due process/jurisdiction to convict of crime not charged.

The respondent asserts that these claims lack merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first claims that his due process rights were violated because he was not competent to stand trial. At the opening of court at approximately 9:47 a.m. on the first day of trial, defense counsel brought the petitioner's condition to the attention of the trial court:

> MR. SLAMEKA: Good morning, your Honor. Robert Slameka on behalf of Mr. Tegeler, your Honor.
> This morning as I sat here, the court officer who brought Mr. Tegeler over told me that, in his opinion, whatever that means, Mr. Tegeler didn't look too good.
>
> THE COURT: Well, Mr. Tegeler, as soon as he walked through that door, he didn't look right to me.
>
> MR. SLAMEKA: I went back and talked to Mr. Tegeler. He was sitting there and he was apparently asleep. And I asked Mr. Tegeler. "How are you?" He said, "I'm sleeping." I said, "Other than that, do you understand what I'm saying? Do you have a full comprehension of what we're doing here today? Do you know where you are and what we're doing?" He said, "Yes."
> That's the only thing I can tell you. Again, I'm not a medical doctor. All I can tell you is he looked, if you will, woozy.
> Mr. Tegeler, could you kindly stand? (Witness stands up.) Do you understand where you're at today?
>
> DEFENDANT TEGELER: Yes.
>
> MR. SLAMEKA: All right. Are we prepared to go to trial? You're okay?
>
> DEFENDANT TEGELER: I hope you are.
>
> MR. SLAMEKA: No, are you?
>
> DEFENDANT TEGELER: Yeah.
>
> MR. SLAMEKA: You're sure?
>
> DEFENDANT TEGELER: Yeah.
>
> MR. SLAMEKA: You're fine?
>
> DEFENDANT TEGELER: (No verbal response.)

>   MR. SLAMEKA: You're fine?
>
>   DEFENDANT TEGELER: (No verbal response.)
>
>   MR. SLAMEKA: I can't hear you.
>
>   THE COURT:  I can't hear you.
>
>   DEFENDANT TEGELER: Yes.  Oh, yes, I'm fine.
>
>   THE COURT: Okay.
>
>   MR. SLAMEKA: Thank you.

(Tr. I at 4-6).  The court proceeded with jury selection and preliminary instruction of the jurors.  The jury was excused at 10:48 a.m. for a recess, and the court raised the issue of the petitioner's health on the record:

>   THE COURT: Please be seated.  I'm going to put this on record, and then you can take your break, and we'll try and get this taken care of.
>       I don't believe that there's anything wrong with the defendant mentally.  He does not seem not to be competent.  But I was concerned because when he came through there, his complexion was very pale and he stumbled.  I'm wondering if there's a physical problem, and I - -
>
>   MR. SLAMEKA: Judge, may I assist you?  I've been to the jail numerous times and talked to Mr. Tegeler.  He has a blood pressure problem.  Apparently, he hasn't gotten his medication.  And I've called Marilyn – I mean, I didn't call her, I told Marilyn to tell the physician.
>
>   THE COURT: Okay.  That's probably what it is.
>
>   MR. SLAMEKA: Yeah.
>
>   THE COURT: Okay.
>
>   MR. SLAMEKA: That's why he's probably so pale.
>
>   [At this point, it appears that the trial judge spoke to her staff.]
>
>   THE COURT: Who's where?

>THE CLERK: They're both in meetings.
>
>THE COURT: I need to speak to somebody right away.
>
>THE CLERK: Okay.
>
>MR. SLAMEKA: Would that be correct, Mr. Tegeler? Is that what you told me, sir?
>
>DEFENDANT TEGELER: Yes.
>
>THE COURT: See, and you know what, it just – I really get so upset about this. Over at the jail they do that. They have no idea what this will do to our docket, you see, and what – because we've got the jury. The man's in jeopardy now. They didn't give him his medication, and anything could happen, and we would have to adjourn or stop and send these jurors home.
>    And now I can't get anybody in the Sheriff's Department on the phone to order the doctor to come over here. The doctor is, quote, "willing to send a nurse."
>
>MR. SLAMEKA: Mr. Tegeler, do you feel okay today with this right now? Are you all right?
>
>DEFENDANT TEGELER: Yeah.
>
>MR. SLAMEKA: Okay.
>
>THE COURT: Well, you know –
>
>MR. SLAMEKA: I'm just asking.
>
>THE COURT: I understand that. I'm just saying, he doesn't look good.
>
>MR. SLAMEKA: I agree with you.
>
>THE COURT: And I would be remiss – I wouldn't be doing my job if I didn't do something about it.
>    So, we'll take a break while I try and get somebody over here, and they've got to get his medication here right away.

(*Id*. at 70-72.) The court recessed at 10:50 a.m. and was back in session at 11:12 a.m. The trial resumed without mention of the petitioner's condition or the events that took place during the break. The court recessed for lunch at 12:30 p.m. and was back in session at 2:17 p.m. with no mention of

-9-

the petitioner's condition or arrangements for his medication. Just before court adjourned for the day at 4:02 p.m., the court noted:

> THE COURT: Okay. Mr. Tegeler is looking much better this afternoon. Because, I mean, he was really looking bad this morning. Some color is coming back into his skin.
> Now, of course, because he's getting better, the Sheriff's Department will probably decide to take him to the hospital tomorrow, and we won't have him here for trial.
>
> MR. SLAMEKA: No, don't go. Don't go. Just tell them to feed you in the morning. Okay?
>
> DEFENDANT TEGELER: Okay.
>
> THE COURT: That would probably be very helpful.

(Tr. I at 251.) The petitioner argues that there is no indication on the record that he received his medication and was able to participate in his defense for the first day of his two-day trial. He argues that the trial court thus deprived him of due process.

The Michigan Court of Appeals rejected this claim, finding that there was no evidence in the trial transcript from which the trial court should have had a *bona fide* doubt as to the petitioner's competency to stand trial. The court explained:

> Although defendant suffered some mild physical side effects as a result of missing his morning dose of prescription medication on the opening day of trial, defendant himself stated at that time that he was well enough to proceed. There is also no indication that defendant's mental condition prevented him from understanding the nature and object of the proceedings against him or assisting in his defense.

*People v. Tegeler*, slip. op. at 2.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1975), and *Pate v. Robinson*, 383

-10-

U.S. 375 (1966)). As the Supreme Court has explained, competency to stand trial involves "the capacity [of a defendant] to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

The concept of competency to stand trial is fundamental to our system, "for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Drope*, 420 U.S. at 171-72). "[A]n erroneous determination of competence threatens a 'fundamental component of our criminal justice system' – the basic fairness of the trial itself." *Id.* at 364 (quoting *United States v. Cronic*, 466 U.S. 648, 653 (1984)).

To safeguard the process, the Supreme Court has established a separate right to a competency hearing. *See Drope*, 420 U.S. at 172. Under the Due Process Clause, a trial court must hold a competency hearing whenever the evidence before it raises a "sufficient doubt" about the accused's mental competency to stand trial. *Id.* at 180; *Branscomb v. Norris*, 47 F.3d 258, 261 (8th Cir. 1995). The Supreme Court has also cautioned that "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope,* 420 U.S. at 181.

The Supreme Court has not established a standard outlining the amount of evidence necessary to support a "sufficient doubt." However, it has instructed a trial court to consider the following factors: (1) evidence of irrational behavior by the accused, (2) the accused's demeanor at trial, and (3) any prior medical opinion as to the mental competency of the accused to stand trial. *Id* at 180; *Branscomb*, 47 F.3d at 261. In some circumstances, the presence of only one of these factors may be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. *Drope*, 420 U.S. at 180. However, there are "no fixed or immutable signs" that invariably indicate the need for a competency hearing. *Id.* Additionally, the trial court may consider an express doubt by the accused's attorney, although such doubt alone generally is not sufficient to trigger a hearing. *Branscomb*, 47 F.3d at 261. The Sixth Circuit has held that where the trial judge "should have experienced doubt with respect to competency to stand trial," there are sufficient grounds to require a competency hearing. *Mackey v. Dutton*, 217 F.3d 399, 414 (6th Cir. 2000) (internal quotations omitted). A full competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial. *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993).

The petitioner's claim that he should have been given a competency hearing fails because there is no evidence in the record that should have raised a *bona fide* doubt with the trial court as to the petitioner's mental competency to stand trial. The petitioner did not display irrational behavior at trial, nor does he point to any prior expert opinions questioning his mental competency. His demeanor at trial, that is, his "woozy" appearance, indicated that he might have a physical health problem, but the record did not suggest that he could not understand the proceedings or aid in his defense. *See Leyvas v. California,* 59 Fed. Appx. 194, 195 (9th Cir. 2003) (unpublished) (habeas petitioner's hypertension, migraine headaches, and dizziness, as well as his allegations that his

appointed counsel was conspiring against him, did not give state court reason to doubt petitioner's competency to stand trial and therefore did not necessitate a hearing). Although trial counsel informed the trial court on the morning of trial that he had found the petitioner sleeping when he went to talk to him and thought that he appeared "woozy," counsel also stated that the petitioner had understood what counsel said and had a full comprehension of what was taking place in court that day. In response to counsel's questions, the petitioner told the judge on the record that he understood where he was, he and was prepared to go to trial that day. Defense counsel never expressed a doubt to the court with respect to the petitioner's mental competency. Although the trial court judge explained that she was concerned because the petitioner's complexion was pale and he had stumbled, those comments addressed the petitioner's physical well-being; the trial judge stated that she did not believe that the petitioner was mentally incompetent. The petitioner repeatedly confirmed to his counsel and the court that he was "fine" or felt all right. In fact, the petitioner's responses to his counsel's questions indicate that he was aware of the nature of the proceedings: when defense counsel asked the petitioner, "Are *we* prepared to go to trial? You're okay?" The petitioner responded, "I hope you are." (Trial Tr. I at 5, emphasis added). The Court concludes from this exchange that the petitioner understood that his trial was to begin and his defense attorney should be prepared. It also shows that he was able to consult with his lawyer and had a rational understanding of the proceedings. Therefore, the evidence at trial did not raise a sufficient doubt about the petitioner's competency, and the petitioner's due process rights were not violated by the court's failure to hold a competency hearing.

A habeas petitioner can also raise a substantive competency claim by alleging that he was tried and convicted while mentally incompetent. However, a habeas petitioner raising a substantive

-13-

claim of incompetency is not entitled to a presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1344 (10th Cir. 1999); *see also Filiaggi v. Bagley*, 445 F.3d 851, 861 (6th Cir. 2006) (Cole, J., dissenting). To prevail on a substantive incompetency claim, a habeas petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial. *Walker,* 167 F.3d at 1347. A habeas petitioner is entitled to an evidentiary hearing on the issue of his competency to stand trial "if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002). However, "[a]lthough retrospective determinations of competency are not prohibited, they are disfavored, and the Court will give considerable weight to the lack of contemporaneous evidence of petitioner's incompetence." *Id.* at 653.

The petitioner is not entitled to habeas relief because he has presented no evidence to support his substantive incompetence claim. The petitioner has only stated in conclusory terms that he was unable to comprehend or assist in the proceedings. A "single conclusory allegation of unspecified mental illness, without more, is not substantial evidence sufficient to raise a reasonable doubt" concerning a habeas petitioner's competency to stand trial. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994). The Sixth Circuit has held that the state court's finding of competency "is a factual finding[] to which deference must be paid." *Filiaggi*, 445 F.3d at 858 (holding that a state defendant accidentally shocked by a stun belt, who appeared disoriented and shaken, took Valium as a result, and was declared incompetent by a psychiatrist four days later, failed to establish a due process violation). In the present case, the petitioner has failed to identify any mental illness or

-14-

condition from which he suffered, nor has he offered this Court any examples of how he was unable to comprehend the proceedings. The petitioner therefore is not entitled to habeas relief on his first claim.

B.

The petitioner next contends that the trial court deprived him of his right to a fair trial by failing to give the jury an instruction on the cognate lesser included offense of voluntary manslaughter. The Michigan Court of Appeals rejected this claim, finding that the petitioner's statement to the police that he was "upset, a little angry, and stressed" over the fact that his girlfriend was going on vacation with the victim did not constitute the level of passion necessary to sustain the first element of voluntary manslaughter. The state court of appeals concluded that the petitioner had failed to establish adequate provocation and further noted that a significant amount of time passed before the murder during which a reasonable person could have attained control over his passions. *People v. Tegeler*, slip. op. at 2.

The Supreme Court has not decided whether the Due Process Clause requires state courts to give jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (holding that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a verdict on a lesser included non-capital offense that would have been supported by the evidence). Although in *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Court ruled that a capital defendant is entitled to a lesser included offense instruction when there is evidence to support it, more recently the Supreme Court held that state courts are not constitutionally required to instruct juries in capital cases on crimes that are not lesser included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998).

The Sixth Circuit Court of Appeals has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). In *Scott v. Elo*, the court of appeals held that a Michigan habeas petitioner who had been convicted of first-degree murder was not entitled to relief because a petitioner does not have a constitutional right to a jury instruction on a lesser included offense in non-capital cases. *Scott*, 302 F.3d at 606. Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser included offense. S*ee Hopkins*, 524 U.S. at 90-91. Cognate offenses such as voluntary manslaughter do not meet the definition of lesser included offenses.

There are, no doubt, some cases in which the failure to give a properly requested instruction informing the jury of the possibility of guilt of a lesser included offense may deprive the defendant of the right to present a defense. Enforcing state law rules precluding such instructions could result in the denial of constitutional rights under those circumstances . *Cf. Rock v. Arkansas*, 483 U.S. 44 (1987); *Chambers v. Mississippi*, 410 U.S. 284 (1973). The petitioner has not presented such a case here on the present record, however.

The petitioner is not entitled to habeas relief on his claim because the Michigan Court of Appeals determined that the evidence at trial did not support a finding of voluntary manslaughter. Where a state court has reviewed a habeas petitioner's request for a lesser included offense instruction and concludes that it was not warranted by the evidence presented at trial, that conclusion is "axiomatically correct, as a matter of state law." *Bagby v. Sowders,* 894 F.2d at 795. Under

Michigan law, voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. *See Foster v. Withrow*, 159 F. Supp. 2d 629, 643 (E.D. Mich. 2001) (collecting cases). As the Michigan Court of Appeals explained, the petitioner's admission that he may have been upset, angry, or stressed did not support the conclusion that he was "incapable of cool reflection"; therefore there was no evidence that he acted with the state of mind necessary for voluntary manslaughter. Neither was there sufficient evidence of an adequate provocation prior to the shooting.

Moreover, the trial court's failure to instruct the jury on the lesser offense of voluntary manslaughter did not prejudice the petitioner where the jury was instructed on the lesser included offense of second-degree murder and convicted him of the greater charge of first-degree murder. Consequently, had the voluntary manslaughter instruction been given, it is likely that the petitioner still would not have been convicted of this lesser crime. The state court's ruling that the petitioner was not entitled to a voluntary manslaughter instruction is objectively reasonable and the petitioner is not entitled to habeas relief on this ground.

C.

Finally, the petitioner claims that the trial court lacked the jurisdiction to try him for first-degree premeditated murder because that charge was not listed on the bindover document. Michigan law provides a statutory right to a preliminary examination, and the jurisdiction of the trial court is limited to the crimes "included within the return of the examining magistrate." *People v. Monick*, 283 Mich. 195, 199, 277 N.W. 883 (1938). The petitioner also argues that he was deprived of due process because he was convicted of a crime for which he was not charged.

The Michigan Court of Appeals rejected this claim, noting that the preliminary examination transcript revealed that the examining magistrate ordered the petitioner bound over for trial on first-degree premeditated murder in addition to the other charges. The state court of appeals further noted that the prosecutor filed an amended information to reflect that the petitioner had been bound over to the circuit court on the first-degree premeditated murder charge, and the trial court again informed the petitioner of this charge at his arraignment on the information. The court of appeals concluded that the petitioner received notice that he was being charged with first-degree premeditated murder. He had ample opportunity to defend against this charge. *People v. Tegeler*, slip. op. at 3.

If the petitioner claims that he was improperly bound over for trial after his preliminary examination, this claim is based on a perceived error of state law and is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). On habeas corpus review, a federal court is bound by a state court's interpretation of state law. *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005). The petitioner's claims that the charge should have been included in the bindover document or that the prosecutor should have moved the court for permission to amend the information are based entirely on state law. Moreover, the petitioner received a preliminary examination in which the magistrate heard evidence and ordered the petitioner bound over for trial on a charge of first-degree premeditated murder, and the prosecutor amended the information to reflect the charge.

Nor is the petitioner entitled to relief on his claim that he had insufficient notice of the premeditated murder charge. A state criminal defendant has a due process right to be informed of the nature of the accusations against him. *Lucas v. O'Dea,* 179 F.3d 412, 417 (6th Cir. 1999). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate

-18-

preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)); *see also Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). A charging document that "fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). Amendments to a state criminal information are permissible as long as the amendment does not enhance the degree of the crime charged or unfairly surprise the defendant. *Wright v. Lockhart*, 854 F.2d 309, 312 (8th Cir. 1988).

The petitioner is unable to show that he lacked notice of the charge of first-degree premeditated murder as a result of the failure to include the charge in the bindover document. At the conclusion of the preliminary examination, the examining magistrate clearly stated that she was binding the petitioner over to stand trial on this additional count of first-degree premeditated murder. (Prelim. Exam. Tr. at 64.) The prosecutor filed an amended information with the trial court that included this additional charge. The petitioner was arraigned on the premeditated murder count at his arraignment on the information in the circuit court. Because the petitioner was made aware of the charge of first-degree premeditated murder at several stages of the state proceedings, the petitioner had adequate notice of the charge and an opportunity to defend against it. The petitioner is not entitled to habeas relief on his final claim.

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 21, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 21, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS